UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>17-CR-20547-SMITH</u>

UNITED STATES OF AMERICA

vs.

GILBERTO RINCON-CASTILLO,

      Defendant.
_____/

## STIPULATED FACTUAL PROFFER

If this matter were to proceed to trial, the Government would prove the stated facts beyond a reasonable doubt. The Parties agree that these facts, which do not include all facts known to the Government and the defendant, **GILBERTO RINCON-CASTILLO**, are sufficient to prove the guilt of the charges that defendant conspired to distribute a narcotic controlled substance, knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 963.

The Department of Boyacá in Colombia produces most of the world's emeralds. The area is also rife with coca farms that produce cocaine base and laboratories that manufacture cocaine for export. The owners of these emerald mines assert a significant amount of control and influence over the whole Boyacá region. One of the largest and most powerful families in the Boyacá region is the Rincon-Castillo family, sometimes referred to as the "Clan Rincon." The head of that family is Pedro Nel RINCON-CASTILLO ("PEDRO") who, along with his brothers, owns and operates emerald mines in the Boyacá region. The defendant, GILBERTO RINCON-CASTILLO (who owns and operates his own emerald mines Boyacá), is PEDRO's brother and is a partner in the

1

control and running of the Clan Rincon.

In the early 2000s, the Revolutionary Armed Forces of Colombia (known by its Spanish acronym FARC), the pre-eminent communist guerilla movement in Colombia, began to move into Boyacá for the purpose of levying taxes on the coca crops or fields, the cocaine laboratories and, significantly, the emerald mines including those of the Clan Rincon. In response to this threat to their lucrative mines, Pedro RINCON-CASTILLO turned to a minority partner in one of his mines, Yesid NIETO. The emerald mine owners, including the Clan Rincon, had long sold minority shares of their mines at inflated prices to drug traffickers or their representatives (straw owners) as both a way to allow the minority partners to launder their drug proceeds and to provide a certain level of protection to the emerald mine owners.

Pedro RINCON-CASTILLO was aware that Yesid NIETO had ties to the United Self-Defense Forces of Colombia (known by its Spanish acronym AUC), a right-wing paramilitary and drug trafficking group. The AUC was the sworn enemy of the FARC, both competing violently for territories to control. In an effort to avoid paying taxes to the FARC, Pedro RINCON-CASTILLO asked for Yesid NIETO's assistance in bringing the AUC to Boyacá to fight and expel the guerilla forces. NIETO turned to his associate, Freddy RENDON-HERRERA a/k/a El Aleman ("The German"), who was a high-ranking commander of the AUC. In short order, the AUC arrived to Boyacá and was able to repel the incursion of the FARC forces into Boyacá. Sometime later and during the time charged in the Indictment, a meeting was held in co-defendant Horacio TRIANA-ROMERO's farm between Yesid NIETO, who had become the de facto leader of the AUC in Boyacá, and the Clan Rincon. GILBERTO RINCON-CASTILLO was present at this meeting. NIETO, on behalf of the AUC, was seeking to levy taxes on the emerald mine owners

in exchange for their continued services. The Clan Rincon, which included GILBERTO RINCON-CASTILLO, instead proposed that the AUC stay in Boyacá and proposed that they should instead levy taxes on the coca farmers and the owners of the cocaine drug laboratories. As a result of this agreement, the coca fields and drug laboratories were provided protection by the AUC and allowed to continue its criminal activities with the approval and assistance of the Clan Rincon, including GILBERTO RINCON-CASTILLO. This agreement by Clan Rincon and the AUC resulted in the exportation of thousands of kilograms of cocaine from Colombia for eventual unlawful importation into the United States during the charged conspiracy.

Additionally, during the conspiracy, GILBERTO RINCON-CASTILLO and his co-defendants permitted drug-traffickers to launder millions of dollars in drug proceeds through emerald mines in Colombia that they controlled or in which they maintained financial interests. They accomplished this by both selling minority shares of the mines to drug traffickers as well as selling emeralds to drug traffickers with forged invoices reflecting inflated prices thereby allowing the trafficker to launder their profits. The money obtained by the drug traffickers were used by the organization for future shipments of thousands of kilograms of cocaine to the United States.

[remainder of the page intentionally left blank.]

GILBERTO RINCON-CASTILLO knew that part of the cocaine involved in the offense conduct, or at least 450 kilograms of cocaine, would ultimately be unlawfully imported into the United States.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date:_____   By:_____
ROBERT J. EMERY
ASSISTANT UNITED STATES ATTORNEY

Date: 1/3/20   By: *[signature]*
STEPHEN GOLEMBE
ATTORNEY FOR DEFENDANT

Date: 1/3/20   By: *[signature]*
GILBERTO RINCON-CASTILLO
DEFENDANT

4